UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANZA TECHNOLOGY, INC., <br><br>Plaintiff, <br><br>v. <br><br>NOVATEL WIRELESS, INC., <br><br>Defendant. | Case No.: 3:16-cv-00585-BEN-AGS <br><br>**ORDER GRANTING MOTION TO DISMISS** <br><br>**(ECF No. 12)** |

Pending before the Court is Defendant Novatel Wireless Inc.'s Motion to Dismiss Plaintiff Anza Technology Inc.'s Complaint[1] for patent infringement (Compl., ECF No. 1) for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Mot., ECF No. 12.)[2] Defendant argues that Plaintiff's Complaint does not meet the pleading standard for patent infringement because it fails to

---

[1] This case is one of several related cases that Anza has filed. The other case numbers are 3:16-cv-01260, 3:16-cv-01261, 3:16-cv-01262, 3:16-cv-01263, 3:16-cv-01264, 3:16-cv-01265, 3:16-cv-01266, and 3:16-cv-01267. Anza's allegations are largely the same for each Defendant.

[2] Defendant initially filed a motion to dismiss at docket number 10, but later on the same day filed a corrected motion at docket entry 12. The Court will consider the motion filed at docket number 12 and therefore finds the motion at docket entry 10 to be moot.

1

"identify specific products and specific details as to how those products allegedly infringe the asserted patents." (Mot. at 1.) Thus, Defendant contends that the Complaint "fails to provide Novatel with fair notice of Plaintiff's claims." (*Id.*) For the following reasons, the Court **GRANTS** the Motion to Dismiss.

## BACKGROUND[3]

Anza Technology, Inc. ("Anza") is a California corporation with its headquarters located in Rocklin, California. (Compl. ¶ 3.) Anza "is a designer, manufacturer, and seller of bonding tools, ESD tools and other products directed to the manufacture and assembly of electronics, in particular the bonding of electrostatic-sensitive devices (ESDs)." (*Id.*) Plaintiff alleges that Defendant's products infringe certain method claims in two patents, U.S. Patent No. 7,124,927 ("the '927 patent") and U.S. Patent No. 7,389,905 ("the '905 patent") (collectively, the "Asserted Patents"). Anza is owner, by assignment, of the entire right, title, and interest in and to both patents. (*Id.* ¶¶ 11, 12.)

The '927 patent is entitled "Flip Chip Bonding Tool and Ball Placement Capillary," and the allegedly infringed independent claim 16 is directed to a "method of utilizing a flip chip bonding tool and ball placement capillary in a microelectric assembly."[4] (*Id.* Ex. A.) The '905 patent is entitled the "Flip Chip Bonding Tool Tip."

---

[3] The Court is not making any findings of fact, but rather summarizing the relevant allegations of the Complaint for purposes of evaluating Defendant's Motion to Dismiss.
[4] The full text of claim 16 of the '927 patent provides:

> 16. A method of utilizing a flip chip bonding tool and ball placement capillary in a microelectronic assembly, comprising:
>    providing a bonding machine capable of being equipped with a flip chip bonding tool and ball placement capillary having a tip comprised of a dissipative material, the dissipative material having a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to stop all current flow to the device being bonded;
>    equipping the bonding machine with the flip chip bonding tool and ball placement capillary;
>    providing a bonding material that is thermally and electrically

(*Id.* Ex. B.)  Plaintiff alleges infringement of independent claims 53 and 55, which are directed to a "method for using a flip chip bonding tool in microelectronic assembly" and a "method of using an electricaLy [sic] dissipative flip chip bonding tool lip [sic], having a resistance in the range of $10^2$ and $10^{12}$ ohms," respectively.[5]  (*Id.*)

---

  conductive;
   melting the bonding material so that the bonding material becomes substantially spherical in shape; and
   electrically connecting at least one component to a substrate by means of pressing the substantially spherical-shaped bonding material, the substantially spherical bonding material being pressed to form a conductive bump.

(Compl. Ex. A.)

[5] The full text of claim 53 of the '905 patent states:

  53. A method for using a flip chip bonding tool in microelectronic assembly, comprising:
   providing a flip chip bonding machine capable of being equipped with a flip chip bonding tool;
   equipping the flip chip bonding machine with the flip chip bonding tool, wherein the flip chip bonding tool has a tip comprised of a dissipative material wherein the dissipative material has a resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to avoid current flow large enough to damage the device being bonded;
   providing a bonding material that is thermally and electrically conductive;
   melting the bonding material so that it becomes substantially spherical in shape; and
   electrically connecting an [sic] at least one component to a substrate by means of the flip chip bonding tool tip pressing the substantially spherical-shaped bonding material against a chip bond pad, wherein the substantially spherical bonding material is pressed to form a conductive bump.

(Compl. Ex. B.)

The full text of claim 55 of the '905 patent provides:

3

Novatel Wireless, Inc. ("Novatel") is a Delaware corporation with a principal place of business in San Diego, California. (*Id.* ¶ 7.) The Complaint identifies that Defendant's accused products "include but are not limited to [Defendant's] wireless hardware based Mobile to Mobile ('M2M') and Mobile Broadband products sold under a Novatel brand or as manufactured and sold under other brands that are manufactured utilizing a 'flip-chip' bonding process (the 'Accused Products')." (*Id.* ¶ 8.) Plaintiff alleges that Defendant Novatel "designs, manufactures, and/or assembles products that depend on high density Integrated Circuit ('IC') chips that require special Electrostatic Discharge ('ESD') handling in the Accused Products assembly process." (*Id.* ¶ 9). Plaintiff further pleads that the "Accused Products utilize a flip chip bonding technique during manufacture and/or assembly. Flip chip bonding is used for packaging integrated circuit devices utilized in the Accused Products and dissipative materials are required during handling so as to reduce electrostatic discharge damage to important components." (*Id.* ¶¶ 15, 22.) According to Plaintiff, "[f]lip chip bonding in the manner described in claim[s] 16[, 53, and 55] has become the standard for mounting ESD-sensitive devices in order to decrease parasitic resistance, inductance, and capacitance. The method[s] of

---

55. A method of using an electricaLy [sic] dissipative flip chip bonding tool lip [sic], having a resistance in the range of $10^2$ to $10^{12}$ ohms, comprising: providing an electrically dissipatite [sic] flip chip bonding tool tip; bonding a material to a device; establishing a potential between the electrically dissipative flip chip bonding tool [] tip and the device being bonded, wherein establishing the potential between the electrically disspative flip chip bonding tool tip and the device being bonded comprises grounding leads on the device being bonded; and [] allowing an essentially smooth curient [sic] to dissipate to the device, the current being low enough so as not to damage the device being bonded and high enough to avoid a build up of charge that could discharge to the device being bonded and damage the device being bonded.

(*Id.*)

4

claim[s] 16[, 53, and 55] to reduce damage to ESD-sensitive devices [are] reflected in a number of manufacturing standards." (*Id.* ¶¶ 16, 23.)

"Defendant manufacturers [sic] and assembles the Accused Products or contracts with others to manufacture and assemble the Accused Products in compliance with one or more of these ESD standards." (*Id.* ¶¶ 17, 24.) Additionally, "Defendant manufactures and assembles the Accused Products utilizing conductive adhesive, such as solder, as packaging interconnects in the Accused Products. The packaging interconnects are formed over the wafer in the form of bumps or balls, spherical in shape, which bumps are electrically and thermally conductive. The packaging interconnects—or solder balls—are heated and pressed against die or substrate pads to form a conductive bump or contact point between the die and the flex." (*Id.* ¶ 18; *see also id.* ¶ 25.)

Based on these allegations, Plaintiff alleges that the "Accused Products, alone or in combination with other products, directly or alternatively under the doctrine of equivalents infringe each of the limitations of independent claim 16 of the '927 patent [and independent claims 53 and 55 of the '905 patent] in violation of 35 U.S.C. § 271(g) when Defendant imports into the United States or offers to sell, sells, or uses within the United States a product which is made by the processes described above." (*Id.* ¶¶ 19, 26.)

## DISCUSSION

### I. The Applicable Legal Standard: Form 18 No Longer Applies and *Twombly/Iqbal* Controls

Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must dismiss complaints that "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court evaluates whether a complaint supports a cognizable legal theory and states sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In patent cases, courts previously looked to Federal Rule of Civil Procedure 84, which in turn referred to "forms in the Appendix." *See Rembrandt Patent*

*Innovations LLC v. Apple Inc.*, Nos. C 14-05094 (WHA), C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015); *In re Bill of Lading*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) ("[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control."). One form in the Appendix was Form 18, a sample complaint for patent infringement that "merely included an allegation that the defendant infringed the asserted patent by making, using, or selling 'electric motors' without specifying the model of the accused motors." *Rembrandt Patent*, 2015 WL 8607390, at *2. In 2012, the Federal Circuit held that a complaint sufficiently pleads direct infringement if it follows Form 18. *In re Bill of Lading*, 681 F.3d at 1336.

The 2015 Amendments to the Federal Rules abrogated Rule 84, with the notation that it was "no longer necessary." *See* Fed. R. Civ. P. 84 Advisory Committee's note to 2015 amendment; *RAH Color Techs. LLC v. Ricoh USA Inc.*, No. 2:15-CV-05203-JCJ, 2016 WL 3632720, at *2 (E.D. Pa. July 7, 2016). The 2015 Amendments took effect December 1, 2015. *See* Fed. R. Civ. P. 84; *RAH Color Techs. LLC*, 2016 WL 3632720, at *2. The abrogation of Rule 84 and, in turn, Form 18 means that the Rule 8 pleading standards as construed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) govern in patent cases. *See, e.g.*, *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-1058 JLS (DHB), 2016 WL 5786936, at *3 (S.D. Cal. Oct. 4, 2016) (applying *Twombly/Iqbal* pleading standards in light of Rule 84's abrogation); *Rembrandt Patent*, 2015 WL 8607390, at *2 ("Rule 84 has been abrogated, so *In re Bill of Lading* no longer controls."); *Tannerite Sports, LLC v. Jerent Enters., LLC*, No. 6:15-cv-00180-AA, 2016 WL 1737740, *5 (D. Or. May 2, 2016) ("Form 18 is no longer on the table; the Court will apply the *Twombly/Iqbal* pleading standard."); *Rah Color Techs. LLC*, 2016 WL 3632720, at *3 ("Following the reasoning of *In re Bill of Lading*, it appears the Federal Rules' amendment abrogating both Rule 84 and the Appendix of Forms means that claims of direct infringement are now also subject to the *Twombly/Iqbal* pleading standard.").

Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

In patent cases, purely procedural issues of law are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). In the Ninth Circuit, to be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**II.     Sufficiency of the Pleading:  Plaintiff's Complaint Fails for Lack of Specificity**

Plaintiff alleges that Defendant infringes the '927 and '905 patents when Defendant, "without authority[,] imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States." 35 U.S.C. § 271(g). The parties agree that liability under § 271(g) is subject to

the same pleading standard as direct infringement under § 271(a).  (Mot. at 11-12; Opp'n at 3 (citing *McRo, Inc. v. Rockstar Games, Inc.*, Nos. 12-1513-LPS-CJB, 12-1517-LPS-CJB, 12-1519-LPS-CJB, 2014 WL 1051527, *1 (D. Del. Mar. 17, 2014)).)

To survive a motion to dismiss, "[s]ufficient allegations [of direct infringement] would include, at a minimum, a brief description of what the patent at issue does, and an allegation that certain named and specifically identified products or product components also do what the patent does, thereby raising a plausible claim that the named products are infringing."  *Bender v. LG Elec.*, No. C 09-02114, 2010 WL 889541, at * 6 (N.D. Cal. Mar. 11, 2010).  In the Ninth Circuit, the accused products must be identified with "at least minimal specificity" so as to adequately put the defendant on notice of the claims against it and the grounds upon which those claims rest.  *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049, 2012 WL 1030031, at *2 (N.D. Cal. Mar. 22, 2016) (granting motion to dismiss where plaintiff failed to identify "particular products, product lines, or product components that allegedly infringed); *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458, 2011 WL 4079231, at *4 (N.D. Cal. Sept. 12, 2011) (granting motion to dismiss for failure to specify which products allegedly infringe where counterclaimant pled infringement of "computer chips, motherboards, computers, and 'other products'"); *Bender*, 2010 WL 889541, at *4 (citing cases holding that factual allegations must identify the specific products accused); *see also Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv229, 2012 WL 9864381, at *4 (E.D. Tex. July 27, 2012) ("[C]ases involving 'more nebulous, less tangible inventions such as computer software methods' may require a higher degree of specificity to provide proper notice to the defendant.").  Where the accused products encompass the defendant's entire business, the complaint fails to plead infringement with the requisite specificity.  *See, e.g.*, *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-cv-1058, 2016 WL 903681, at *4 (S.D. Cal. Feb. 8, 2016) (dismissing direct infringement claims where plaintiff only identified defendant's "custom insoles" as the accused product).

Defendant argues that Plaintiff's Complaint fails to satisfy the pleading requirements for direct patent infringement because "rather than identify specific products and specific details as to how those products allegedly infringe the asserted patents, Plaintiff merely provides conclusory statements alleging that generic categories of [Defendant's] products infringe certain claims." (Mot. at 1). According to Defendant, Plaintiff's Complaint "does not adequately identify the allegedly infringing products, the allegedly infringing flip-chips within any specific products, or how Novatel products allegedly infringe the Asserted Patents." (*Id.* at 14.) Plaintiff counters that it has sufficiently pled a cause of action under 35 U.S.C. § 271(g) because it has identified a specific method alleged to infringe—the flip chip bonding process—and an identifiable category of products—"wireless hardware based Mobile to Mobile ('M2M') and Mobile Broadband products sold under a Novatel brand or as manufactured and sold under other brands that are manufactured utilizing a 'flip chip' bonding process." (Opp'n at 10.)

The Court agrees with Defendant that Plaintiff has failed to sufficiently identify the Accused Products. Plaintiff alleges that certain hardware chips are made by a process—flip chip bonding—that infringes the Asserted Patents. But Plaintiff does not allege that Defendant manufactured the chips. Rather, some third party makes the infringing chips, which are then included in Defendant's products. (Compl. ¶ 9 ("Defendant designs, manufactures and/or assembles products *that depend on* high density Integrated Circuit ('IC') chips that require special Electrostatic Discharge ('ESD') handling in the Accused Products assembly process." (emphasis added)); ¶ 15 & 22 ("Flip chip bonding is used for packaging integrated circuit devices *utilized in* the Accused Products." (emphasis added)).) The Accused Products are defined as *including, but not being limited to*, Defendant's "wireless hardware based Mobile to Mobile ('M2M') and Mobile Broadband products sold under a Novatel brand or as manufactured and sold under other brands that are manufactured utilizing a 'flip-chip' bonding process." (*Id.* ¶ 8.)

Plaintiff's description of the Accused Products provides no specificity about which of Defendant's products include chips made by the infringing process. Worse, it includes

non-Novatel branded products that include the infringing chips.  And the description fails to provide sufficient factual information to allow Defendant to identify the specific chips made by the infringing process that are included in Defendant's products.  Such broad allegations fail to give Defendant notice of what specific products or aspects of its products allegedly infringe.  *See, e.g.*, *Footbalance Sys.*, 2016 WL 903681, at *4 (holding that "these allegations are too broad, such that [they] do not satisfy Form 18 standards, as they encompass essentially [defendant's] entire business, leaving [defendants] with no notice as to how [they] allegedly infringe").

Plaintiff contends that it can use the discovery process to narrow its infringement contentions.  (Opp'n at 11, 14-15.)  It argues that Defendant, rather than Plaintiff, "is in the best position to know who manufactures and/or assembles its Accused Products."  (Opp'n at 12.)  The Court finds this argument unpersuasive.  *See Apollo Fin., LLC v. Cisco Sys., Inc.*, No. 2:15-cv-9696, 2016 WL 3234518, at *3 (C.D. Cal. June 7, 2016) (granting motion to dismiss and rejecting plaintiff's argument that access to discovery would allow it to state its claims with more specificity).  In the post *Twombly/Iqbal* era, the Supreme Court has stated that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  And, as noted, to state a plausible claim, "most courts have, in the wake of *Twombly* and *Iqbal*, required some level of specificity regarding the accused product, *i.e.,* beyond the generic description. . . . Indeed, many courts have even required an exact identification."  *Footbalance,* 2016 WL 903681, at *4.  Plaintiff fails to satisfy that standard here.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For the above reasons, the Court **GRANTS** the motion to dismiss.[6]  Because leave to amend should be freely given, *see* Fed. R. Civ. P. 15, the Court will grant Plaintiff leave to file an amended complaint no later than twenty one (21) days after the date of this Order.

**IT IS SO ORDERED.**

Dated:  November 4, 2016

Hon. Roger T. Benitez
United States District Judge

---

[6] The Court notes that Defendant offers additional arguments why the Complaint should be dismissed.  For instance, Defendant argues Plaintiff must plead each claim element and tie those limitations to the Accused Products.  (Mot. at 16.)  Defendant also contends that Plaintiff's pleading of infringement under the doctrine of equivalents is insufficient because Plaintiff must make clear "what [is] alleged to be literally infringed and what [is] alleged to be infringed by equivalents."  (Mot. at 16 (quoting *Macronix Int'l Co. v. Spansion, Inc.*, 4 F. Supp. 3d 797, 804-5 (E.D. Va. 2014)).)  In light of the abrogation of Rule 84, courts have split on how much detail must be included in a complaint to state a plausible claim.  *Compare Avago Techs. General IP v. Asustek Computer, Inc.*, Nos. 15-cv-04525, 16-cv-00451, 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016) ("Nothing about *Twombly* and *Iqbal* suggests that a patent infringement complaint that largely tracks the language of the claims to allege infringement is insufficient per se. . . . Moreover, this District generally has not required detailed infringement theories until the time that infringement contentions are served, which is typically several months after a complaint has been filed."), *with Atlas IP LLC v. Pacific Gas & Electric Co.*, No. 15-cv-05469, slip op. at 5-8 (N.D. Cal. Mar. 9, 2016) (dismissing a complaint that recited only some of the elements of the sole asserted claim, and provided only a "threadbare" description of the alleged abilities of the accused device).  This Court need not enter this debate because, for the reasons discussed in the text, Plaintiff has failed to sufficiently identify the infringing products.